FILED
MAR 28 2006
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **PSM Farms, LLC, By and Through Stratton K. Murphy, a Partner Other Than Tax Matters Partner,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | CASE NO. 06-246 T |
| **United States of America,** | § | |
| **Defendant.** | § | |

**COMPLAINT FOR READJUSTMENT OF PARTNERSHIP ITEMS UNDER CODE SECTION 6226**

Plaintiff Stratton K. Murphy, a Partner other than Tax Matters Partner of PSM Farms, LLC, a Delaware limited liability company, hereby files this Complaint for Readjustment of Partnership Items (this "Complaint") under Section 6226 of the Internal Revenue Code of 1986, as amended (the "Code") against Defendant the United States of America. In support of this Complaint, Plaintiff will show the Court as follows:

## I. PARTIES

1. Plaintiff Stratton K. Murphy is a U.S. citizen and resident of the State of North Carolina, with social security number 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. Mr. Murphy's mailing address is 4134 U.S. Highway # 117, Rose Hill, NC 28458. At all relevant times herein, Mr. Murphy was the sole owner of SKM Ventures, LLC ("SKMV"), a Delaware limited liability company and an entity disregarded as separate from Mr. Murphy for federal income tax purposes. SKMV's federal employer identification number is 56-2198466, and its principal place of business is located at 4134 U.S. Highway # 117, Rose Hill, NC 28458. Before distributing its interest in PSM Farms, LLC to Mr. Murphy in August of 2000, SKMV owned a 25.61% membership interest therein.

From and after that time, Mr. Murphy owned the 25.61% membership interest in PSM Farms, LLC.

2. Plaintiff Stratton K. Murphy is a Notice Partner of PSM Farms, LLC within the meaning of Section 6231(a)(8) of the Code.

3. Harry D. Murphy is a U.S. citizen and resident of the State of North Carolina, with social security number 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. Mr. Murphy's mailing address is 4134 U.S. Highway # 117, Rose Hill, NC 28458. At all relevant times herein, Mr. Murphy was the sole owner of HDM, LLC ("HDM"), a Delaware limited liability company and an entity disregarded as separate from Mr. Murphy for federal income tax purposes. HDM's federal employer identification number is 56-2198334, and its principal place of business is located at 4134 U.S. Highway # 117, Rose Hill, NC 28458. Before distributing its interest in PSM Farms, LLC to Mr. Murphy in August of 2000, HDM owned a 48.78% membership interest therein. From and after that time, Mr. Murphy owned the 48.78% membership interest in PSM Farms, LLC. Mr. Murphy is a proper party to this proceeding pursuant to Section 6226(c) of the Code.

4. Harry D. Murphy is the Tax Matters Partner of PSM Farms, LLC.

5. Marc D. Murphy is a U.S. citizen and resident of the State of North Carolina, with social security number 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. Mr. Murphy's mailing address is 4134 U.S. Highway # 117, Rose Hill, NC 28458. At all relevant times herein, Mr. Murphy was the sole owner of MDM Ventures, LLC ("MDMV"), a Delaware limited liability company and an entity disregarded as separate from Mr. Murphy for federal income tax purposes. MDMV's federal employer identification number is 56-2198337, and its principal place of business is located at 4134 U.S. Highway # 117, Rose Hill, NC 28458. Before distributing its interest in PSM Farms, LLC to Mr. Murphy in August of 2000, MDMV owned a 25.61% membership interest therein. From and

after that time, Mr. Murphy owned the 25.61% membership interest in PSM Farms, LLC. Mr. Murphy is a proper party to this proceeding pursuant to Section 6226(c) of the Code.

6. Stratton K. Murphy, Harry D. Murphy, and Marc D. Murphy are collectively referred to herein sometimes as the "Partners." Relatedly, because each is disregarded as an entity separate from their sole owner, SKMV, HDM, and MDMV are also collectively referred to herein sometimes as the "Partners."

7. PSM Farms, LLC (the "Partnership") is a Delaware limited liability company, with federal employer identification number 56-2198330. Its principal place of business is located at 4134 U.S. Highway # 117, Rose Hill, NC 28458.

8. The Partnership timely filed its partnership return (IRS Form 1065) for tax year ended December 27, 2000 with the Internal Revenue Service Center located in Cincinnati, Ohio.

9. On December 15, 2005, the Commissioner of Internal Revenue (the "Commissioner") issued a Notice of Final Partnership Administrative Adjustment (the "FPAA") against the Partnership for tax year ended December 27, 2000. A copy of the FPAA is attached hereto as Exhibit "A." The Commissioner issued the FPAA to Plaintiff—and other parties hereto—from the following address: Internal Revenue Service ("IRS"), JFK P.O. Box 9112, Stop 41100, Boston, MA 02203.

10. The proposed adjustments set forth in the FPAA would result in deficiencies for the Partners for tax year 2000 because each Partner was a partner in the Partnership for the tax year at issue, as described above.

11. Harry D. Murphy, as Tax Matters Partner of the Partnership, did not file a petition with the Tax Court or a complaint with either the applicable federal district court or this Court within ninety days after the day on which the FPAA was mailed to him as Tax Matters Partner.

12. Plaintiff Stratton K. Murphy, as a Notice Partner of the Partnership, is filing this Complaint on behalf of the Partnership within sixty days following the expiration of the ninety-day period set forth in Code Section 6226(a).

13. According to Code Sections 6226(b), 6226(c), and 6226(d), Plaintiff has standing to bring this Complaint.

## II. DEFENDANT

14. Defendant is The United States of America and may be served—pursuant to Rule 4 of the Rules of the United States Court of Federal Claims—through delivery by the Clerk of the United States Court of Federal Claims to the U. S. Attorney General of five copies of the Complaint.

## III. STATEMENT OF CASE

15. This is a civil action arising under Section 6226(b) of the Code for the redetermination of final partnership administrative adjustments to the Partnership's Form 1065 return for tax year ended December 27, 2000, as set forth by the Commissioner in the FPAA.

16. The Commissioner erroneously determined that: (a) the form of the transactions at issue should be recharacterized or disregarded under a number of different theories; (b) the Partnership should be disregarded as a partnership for federal income tax purposes; and (c) several corresponding adjustments should be made to the Partners' federal tax liabilities. Moreover, the Commissioner erroneously determined that penalties under Code Section 6662 should be imposed.

## IV. JURISDICTION AND VENUE

17. Sections 6226(b) and 6226(c) of the Code and 28 U.S.C. §§ 1346(a)(1) and 1508 confer jurisdiction on this Court.

18. For jurisdiction purposes, the Partners have complied with the requirements of Code Section 6226(e) by depositing the amount by which their federal income tax liability would be increased if treatment of the Partnership items on their tax returns for the tax year at issue were made consistent with the treatment of partnership items on the Partnership's tax return as adjusted by the Commissioner in the FPAA.

19. The Partners have made the following deposits:

| Partner | | Deposit Amounts |
|---|---|---|
| Harry D. Murphy | | $3,275,710 |
| Marc C. Murphy | | $1,440,000 |
| Stratton K. Murphy | | $1,440,000 |

20. True and correct copies of the deposits sent to the IRS are attached to this Complaint as Exhibit "B."[1]

## V. DESCRIPTION OF TRANSACTIONS

21. After consultation with—and obtaining the advice, guidance, and counsel of—qualified tax professionals, the Partners entered into the following transactions (the "Transactions"), which provide the basis for the issues in this case.

**Purchase of Long and Sale of Short Options**

22. As of April 14, 2000, the Partners entered into certain over-the-counter, non-publicly traded European-style foreign currency option positions on the EURO and Swiss Franc, as applicable (collectively the "Options"), with Deutsche Bank AG New York Branch (the "Bank"), with each Partner purchasing an Option and selling an Option.

[1] In the attached documents, the deposit for Harry D. Murphy includes an amount in addition to the deposit amount set forth above, which relates to another transaction entered into by the taxpayer during the same tax year and disputed by the Internal Revenue Service.

23. HDM purchased—for a premium of $12,000,000.00—an Option on the EURO/U.S. Dollar exchange rate with a strike price of .9207 USD per 1.00 EURO, an expiration date of June 13, 2000, and a final exchange amount of $24,000,000.00.

24. MDMV purchased—for a premium of $6,300,000.00—an Option on the U.S. Dollar/Swiss Franc exchange rate with a strike price of 1.5839 CHF per 1.00 USD, an expiration date of June 13, 2000, and a final exchange amount of $12,600,000.00.

25. SKMV purchased—for a premium of $6,300,000.00—an Option on the U.S. Dollar/Swiss Franc exchange rate with a strike price of 1.5839 CHF per 1.00 USD, an expiration date of June 13, 2000, and a final exchange amount of $12,600,000.00.

26. The Options described in paragraphs 23 through 25 above are referred to herein as the "Long Options."

27. HDM sold—for a premium of $11,640,000.00—an Option on the EURO/U.S. Dollar exchange rate with a strike price of .9205 USD per 1.00 EURO, an expiration date of June 13, 2000, and a final exchange amount of $23,190,000.00.

28. MDMV sold—for a premium of $6,111,000.00—an Option on the U.S. Dollar/Swiss Franc exchange rate with a strike price of 1.5837 CHF per 1.00 USD, an expiration date of June 13, 2000, and a final exchange amount of $12,174,750.00.

29. SKMV sold—for a premium of $6,111,000.00—an Option on the U.S. Dollar/Swiss Franc exchange rate with a strike price of 1.5837 CHF per 1.00 USD, an expiration date of June 13, 2000, and a final exchange amount of $12,174,750.00.

30. The Options described in paragraphs 27 through 29 above are referred to herein as the "Short Options" (and collectively with the Long Options, the Options).

**Contributions of the Options to the Partnership**

31. As of April 17, 2000, each of the Partners contributed their respective Options (including their Long Options and Short Options) to the Partnership as contributions of capital.

**Options Terminate**

32. On June 13, 2000, the Options held by the Partnership terminated in accordance with their terms.

**Distribution of Partnership Interests**

33. In August of 2000, the Partners distributed their ownership interests in the Partnership to their respective sole members. Because the Partners are entities disregarded as separate from their sole members for federal income tax purposes, these distributions were non-events for federal income tax purposes.

**Purchase of Investments**

34. Throughout tax year 2000, the Partnership made numerous investments in various publicly-traded stocks and securities.

**Contributions of the Bonds**

35. On December 5, 2000, the Partners each contributed to the Partnership as a contribution of capital certain North Carolina municipal bonds (the "Bonds") held by each Partner for investment purposes.

**Contribution of Partnership Interests to PSM, Inc.**

36. As of December 27, 2000, the Partners contributed their interests in the Partnership—collectively equal to 100% of the outstanding ownership interests therein—to PSM, Inc., a Delaware corporation (the "Corporation").

**Partnership Liquidation**

37. As a result of the foregoing—i.e., all of the interests in the Partnership being transferred to a single person, the Corporation—the Partnership liquidated and dissolved as a matter of law.

38. On its liquidation and dissolution, all of the Partnership's assets—including but not limited to the Bonds—were distributed to the Corporation as its sole owner.

**Sale of Bonds**

39. As of December 29, 2000, the Corporation sold the Bonds, triggering a long-term capital loss for federal income tax purposes in the amount of $24,531,884.00, which the Corporation reported on its Form 1120S for tax year 2000. The Corporation allocated this loss pro rata among its shareholders (also the Partners) according to their respective ownership interests in the Corporation.

## VI. 2000 TAX RETURNS

40. The Partnership timely filed its Form 1065 for short tax year ended December 27, 2000, the date of its termination and dissolution. Ernst & Young LLP prepared the Partnership's tax return.

41. The Corporation timely filed a Form 1120S for tax year ended December 31, 2000, which was also prepared by Ernst & Young LLP.

## VII. RELIANCE ON TAX PROFESSIONALS

42. The Partners and the Partnership sought and reasonably relied in good faith upon the advice, counsel and guidance of competent tax professionals, including but not limited to professionals at Proskauer Rose LLP and Ernest & Young, LLP, in determining the federal

income tax consequences and proper reporting obligations relative to the Transactions described above before filing their respective federal income tax returns.

43. The Partners were introduced to the Transactions by their long-time advisor Ernest & Young, LLP, which presented the Transactions as sound and legal business investments, both before and after tax considerations were taken into account.

44. Ernest & Young, LLP ultimately provided advice regarding all aspects of the Transactions, including profit potential, investment strategy, choice of entities, business structure, and accounting and tax reporting.

45. The Partners at all times considered Ernest & Young, LLP to be a qualified and independent professional entity having no interest in the Transactions other than in the capacity of providing professional investment, accounting and tax advice.

46. At the suggestion of Ernest & Young, LLP, the Partners obtained a written legal opinion from Proskauer Rose LLP on December 29, 2000 (the "Opinion"), wherein Proskauer Rose LLP opined, on a more-likely-than-not basis, as to the federal income tax consequences of the Transactions. The conclusions set forth in the Opinion provided the bases for the manner in which the Transactions were reported for federal income tax purposes.

## VIII. COMMISSIONER'S ERRORS IN FPAA

47. Plaintiff incorporates paragraphs 1 through 46 as though fully set forth herein.

48. By its FPAA, the Commissioner erred in determining that:

a) The net loss from Form 4797 is $0.00 in lieu of the amount of ($738,000.00) as reported by the Partnership for short tax year ended December 27, 2000.

b) Ordinary dividends are $0.00 in lieu of the amount of $60.00 as reported by the Partnership for tax year 2000.

c) Net short-term gain is $0.00 in lieu of the amount of $11,560.00 as reported by the Partnership for tax year 2000.

d) Investment income is $0.00 in lieu of $60.00 as reported by the Partnership for tax year 2000.

e) Tax-exempt interest income is $0.00 in lieu of $9,836.00 as reported by the Partnership for tax year 2000.

f) The Partnership's outside basis is disallowed in its entirety for tax year 2000.

49. By its FPAA, the Commissioner erred in determining that neither the Partnership nor its Partners have established the existence of the Partnership as a partnership as a matter of fact.

50. By its FPAA, the Commissioner erred in determining that even if the Partnership existed as a partnership, it was formed and availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interests of its Partners.

51. By its FPAA, the Commissioner erred in determining that the formation of the Partnership, the acquisition of any interest in the Partnership by the Partners, the purchase of offsetting options, the transfer of offsetting options to the Partnership in return for a partnership interest, the purchase of assets by the Partnership, the distribution of those assets to the Corporation in complete liquidation of the partnership interests in the Partnership, and the subsequent sale of those assets to generate a loss, all within a period of less than nine months, had no business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes. Accordingly, the

Commissioner erred in determining that the Partnership and the preceding described transactions shall be disregarded in full and:

a) Any losses resulting from the above transactions are not allowable as deductions; and

b) Increases in bases of assets are not allowed to eliminate gain for federal income tax purposes.

52. By its FPAA, the Commissioner erred in determining that the Partnership was a sham, lacked economic substance, and under Treasury Regulation § 1.701-2 was formed and availed of in connection with a transaction or transactions in tax year 2000, a principal purpose of which was to reduce substantially the present value of the Partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Code. Consequently, the Commissioner erred in determining that:

a) The Partnership is disregarded and that all transactions engaged in by the Partnership are treated as engaged in directly by its Partners, including the determination that the assets acquired by the Partnership, including but not limited to the foreign currency options, were acquired directly by the Partners;

b) The foreign currency options contributed to or assumed by the Partnership are treated as never having been contributed to or assumed by the Partnership and any gains or losses realized by the Partnership on such options are treated as having been realized by its Partners;

c) The Partners of the Partnership should be treated as not being partners in the Partnership; and

d) Contributions to the Partnership will be adjusted to reflect clearly the Partnership's or its Partners' income.

53. By its FPAA, the Commissioner erred in determining that the obligations under the sold option positions transferred to the Partnership (the Short Options) constitute liabilities for purposes of Treasury Regulation § 1.752-6, the assumption of which by the Partnership shall reduce the Partners' bases in the Partnership in the amounts of $11,640,000.00 for Harry D. Murphy, $6,111,000.00 for Marc D. Murphy, and $6,111,000.00 for Stratton K. Murphy, but not below the fair market value of the partnership interests.

54. By its FPAA, the Commissioner erred in determining that neither the Partnership nor its Partners entered into the options positions, acquired North Carolina State bonds or purchased stock with a profit motive for purposes of Code Section 165(c)(2).

55. By its FPAA, the Commissioner erred in determining that the economically offsetting option positions constitute an arrangement under Code Section 465(b)(4) to limit the exposure to risk of loss and that neither the Partnership nor its Partners established any other amounts considered to be at-risk for purposes of Code Section 465 that would allow the Partners to deduct losses arising from or in connection with the Partnership.

56. By its FPAA, the Commissioner erred in determining that, even if the foreign currency options are treated as having been contributed to the Partnership, the amount treated as contributed by the Partners under Code Section 722 is reduced by the amounts received by the contributing Partners from the contemporaneous sales of the call options to the same counter-party. Thus, the Commissioner erred in determining that the basis of the contributed options is reduced both in the hands of the contributing Partners and the Partnership, and consequently that

any corresponding claimed increases in the outside basis in the Partnership resulting from the contributions of the foreign currency options is disallowed.

57. By its FPAA, the Commissioner erred in determining that the adjusted bases of the purchased option positions and other contributions made by the Partners to the Partnership have not been established under Code Section 723. Consequently, the Commissioner erred in determining that the Partners of the Partnership have not established adjusted bases in their respective interests in the Partnership in an amount greater than zero.

58. By its FPAA, the Commissioner erred in determining that, in the case of a sale, exchange, or liquidation of the interests in the Partnership, neither the Partnership nor its Partners have established that the bases of the Partners' interests were greater than zero for purposes of determining gain or loss to such Partners from the sale, exchange, or liquidation of such partnership interests.

59. By its FPAA, the Commissioner erred in determining that the adjustments of partnership items of the Partnership are attributable to a tax shelter for which no substantial authority has been established for the position taken, and for which there was no showing of reasonable belief by the Partnership or its Partners that the position taken was more-likely-than-not the correct treatment of the tax shelter and related transactions.

60. By its FPAA, the Commissioner erred in determining that all of the alleged underpayments of tax resulting from the FPAA's adjustments of partnership items are attributable to, at a minimum:

a) Substantial understatements of income tax;

b) Gross valuation misstatement(s); or

c) Negligence or disregarded rules or regulations.

61. By its FPAA, the Commissioner erred in determining that there has not been a showing by the Partnership or any of its Partners that there was reasonable cause for any of the resulting underpayments, that the Partnership or any of its Partners acted in good faith, or that any other exceptions to the penalty apply.

62. By its FPAA, the Commissioner therefore erred in determining that, at a minimum, the accuracy-related penalty under Code Section 6662(a) applies to all underpayments of tax attributable to adjustments of partnership items of the Partnership, and that the penalty should be imposed on the components of underpayment as follows:

a) A 40% penalty should be imposed on the portion of any underpayment attributable to the gross valuation misstatement as provided by Code Sections 6662(a), 6662(b)(3), 6662(e), and 6662(h).

b) A 20% penalty should be imposed on the portion of the underpayment attributable to negligence or disregard of rules and regulations as provided by Code Sections 6662(a), 6662(b)(1) and 6662(c).

c) A 20% penalty should be imposed on the underpayment attributable to the substantial understatement of income tax as provided by Code Sections 6662(a), 6662(b)(2), and 6662(d).

d) A 20% penalty should be imposed on the underpayment attributable to the substantial valuation misstatement as provided by Code Sections 6662(a), 6662(b)(3), and 6662(e).

63. By its FPAA, the Commissioner erred in making each and every adjustment set forth therein.

## IX. PARTNERSHIP'S CORRECT TREATMENT OF TAX ITEMS

64. Plaintiff incorporates paragraphs 1 through 63 as though fully set forth herein.

65. The Partnership properly calculated and reported its net ordinary loss from Form 4797 for tax year 2000 equal to ($738,000.00).

66. The Partnership properly calculated and reported its ordinary dividend income for tax year 2000 equal to $60.00.

67. The Partnership properly calculated and reported its net short-term capital gain for tax year 2000 equal to $11,560.00.

68. The Partnership properly calculated and reported its investment income for tax year 2000 equal to $60.00.

69. The Partnership properly calculated and reported its tax-exempt interest income for tax year 2000 equal to $9,836.00.

70. In addition to the foregoing, the Partnership properly calculated and reported all of its items of income, gain, loss, deduction, and credit for tax year 2000.

71. The Partnership properly calculated and reported its outside partnership basis for tax year 2000.

72. The Partnership is an entity validly created and existing for all state and federal law purposes, and recognized as a "partnership" for federal income tax purposes for tax year 2000.

73. The Partnership was not formed and/or availed of solely for purposes of tax avoidance.

74. The Partnership was not a sham—in substance or in fact—for federal income tax purposes for tax year 2000.

75. The Partnership did not lack economic substance for federal income tax purposes for tax year 2000.

76. No part of the Transactions may be ignored, disregarded, or recharacterized on the basis that they lacked economic substance, business purpose, or otherwise constituted a sham—in fact or substance—for federal income tax purposes.

77. The Partnership and its Partners properly determined and reported the tax consequences of the Transactions for federal income tax purposes.

78. The losses and other benefits claimed by the Partners on their federal tax returns cannot be disallowed on the basis that either the Transactions or any of the entities involved therein constituted shams or lacked economic substance because neither of these doctrines is incorporated into or otherwise a part of the Code.

79. Disallowance of the losses or other benefits claimed by the Partners in this case on the basis of either the sham-transaction or economic-substance theories asserted by the Commissioner would violate the separation of powers provisions of the United States Constitution.

80. The Partnership was not formed or availed of in connection with a transaction or transactions in a manner inconsistent with the intent of Subchapter K of the Code and may not otherwise be disregarded, nor may any of its transactions be recharacterized, in whole or in part, under the authority of Treasury Regulation § 1.701-2.

81. Treasury Regulation § 1.701-2 is invalid.

82. The obligations under the Short Options do not constitute liabilities under Code Section 752. Consequently, the Partnership's assumption of those obligations is not regarded as a

distribution of money to the Partners under the Code and cannot serve to reduce the Partners' bases in their interests in the Partnership.

83. Even if the obligations under the Short Options do constitute liabilities under Code Section 752, the amount of the "liability" transferred to the Partnership under those Options is equal to zero. Consequently, the Partners' bases in the Partnership cannot be reduced by any part of the Short Options transferred to the Partnership.

84. Treasury Regulation § 1.752-6 is invalid and inapplicable to the facts of this case.

85. Code Section 165(c)(2) only applies with respect to individuals, and therefore does not apply to the Partnership. Moreover, to the extent that Code Section 165(c)(2) applies to the Partners, it requires partner-level determinations, over which this Court lacks jurisdiction in connection with this TEFRA proceeding.

86. Alternatively, Code Section 165(c)(2) does not operate to disallow the losses or other tax benefits claimed by either the Partnership or the Partners for tax year 2000.

87. Code Section 465 applies at the partner—rather than partnership—level, and therefore does not apply to the Partnership. Moreover, to the extent that Code Section 465 applies to the Partners, it requires partner-level determinations, over which this Court lacks jurisdiction in connection with this TEFRA proceeding.

88. Alternatively, the Options do not represent an arrangement under Code Section 465(b)(4) to limit the exposure to risk of loss, and Section 465 otherwise does not operate to limit the losses or other tax benefits claimed by either the Partnership or its Partners for tax year 2000.

89. The Long Options and the Short Options are separate investments for federal income tax purposes.

90. The amounts treated as contributed by the Partners to the Partnership under Code Section 722 are not reduced by the amounts received by the Partners from the sales of the Short Options.

91. The Partners have adequately established and substantiated their adjusted bases in their interests in the Partnership under Code Section 723, and have properly calculated and reported such adjusted bases for federal income tax purposes.

92. In every other respect, the federal tax consequences of the transactions at issue in this case, including without limitation the Transactions, are as set forth in the Opinion discussed above and as reported by the Partnership and its Partners on their federal tax returns for tax year 2000.

93. The Partners are not subject to penalties under Code Section 6662 on any underpayment ultimately determined because there was reasonable cause for such underpayment and the Partners acted in good faith as contemplated by Code Section 6664(c)(1).

94. The Partners are not subject to accuracy-related penalties under Code Section 6662 because any tax liability ultimately determined is not attributable to: (a) negligence or disregard of rules or regulations; (b) any substantial understatement of income tax; or (c) any substantial or gross valuation misstatement under Chapter 1.

95. The Partners are not subject to penalties under Code Section 6662 because any understatement ultimately determined is attributable to items for which the relevant facts were adequately disclosed in the Partnership's and the Partners' federal tax returns or in a statement attached thereto, and there is a reasonable basis for the tax treatment of such item.

96. The Transactions at issue in this case do not constitute a tax shelter within the meaning of Code Section 6662.

97. In the alternative, even if the Transactions do constitute a tax shelter, the Partners are not subject to penalties under Code Section 6662 because any understatement ultimately determined is attributable to the tax treatment of items for which there is or was substantial authority for such treatment, and, furthermore, the Partners reasonably believed that the tax treatment of such item by them was more-likely-than-not the proper treatment.

## X. BURDEN OF PROOF

98. Defendant has the burden of proof under Section 7491 of the Code.

## X. PRAYER

Plaintiff respectfully prays for judgment against Defendant and respectfully asks the Court to order Defendant to reverse the adjustments set forth in the FPAA. Plaintiff further prays that the Court order Defendant to return all of the deposits made in connection with the FPAA and this Complaint, which total $6,155,710, plus interest to the Plaintiff and other parties hereto. Plaintiff also requests that the Court grant it such further relief, legal or equitable, to which it may be entitled.

Respectfully submitted,

By: [signature]

Joel N. Crouch
Texas State Bar No.05144220
M. Todd Welty
Texas State Bar No. 00788642
Michael E. McCue
Texas State Bar No. 13494150
Anthony P. Daddino
Texas State Bar No. 24036434

MEADOWS, OWENS, COLLIER, REED
COUSINS & BLAU, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
jcrouch@meadowsowens.com
twelty@meadowsowens.com
mmccue@meadowsowens.com
adaddino@meadowsowens.com

ATTORNEYS FOR PLAINTIFF

MARCH 27, 2006

334573

Notice 2000-44 Case

**Internal Revenue Service**
JFK PO Box 9112
Stop 41100
Boston, MA 02203

**Department of the Treasury**

Refer To: SE:S:E:TS:NAA-1

Taxpayer Identifying Number: 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

Name of Partnership: PSM Farms, LLC

Partnership Identifying Number: 56-2198330

Tax Year Ended: December 27, 2000

Date: DEC 15 2005

Date FPAA Mailed to the Tax Matters Partner:
DEC 15 2005

Harry D. Murphy and
Lynn C. Murphy
PO Box 970
Rose Hill, NC 28458

Person to Contact: Mr. J. Heinlin
Employee Number: 04-03576

Contact Hours: 8:00 AM - 4:30 PM (Monday - Friday)

Contact Telephone Number: (617) 316-2421
(not a toll free number)

## NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice.

We are proposing adjustments to the partnership items of the partnership and the tax year shown above. We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership. (The TMP is the partner designated by the partnership to deal with the IRS.) He/she is also authorized to act for the partners who are not entitled to receive this notice. Any partner who wants a copy of the examination report should request it from the TMP. If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease to the tax liability on your individual return. Form 870-P, *Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Taxable Years Ending After August 5, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return. The adjustments may include partnership level determinations regarding penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

EXHIBIT
tabbies
A

You have three options available to you:

**1. If you agree with the adjustments:**

Sign and return the enclosed Form 870-P/Form 870-PT. When you sign Form 870-P/Form 870-PT, you are agreeing to pay any additional tax and interest resulting from the adjustments to the partnership return. For tax years ending after August 5, 1997, you are also agreeing to any partnership level determination as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items, if any. In addition, you are waiving your rights to participate in any administrative or judicial proceeding affecting partnership items and in partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items for the tax year in question. This is a binding settlement only if you sign and return Form 870-P/Form 870-PT and we sign on behalf of the Commissioner of Internal Revenue Service. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). Once the agreement is signed by both parties, you may not file a claim to change the items in question or claim a refund/credit based on a readjustment.

Note: If you are the TMP of the partnership, see the section of this letter entitled, *"For the Tax Matters Partner of the Partnership"*.

**2. If you do not agree with the adjustments:**

If you are the TMP of the partnership and want to contest the adjustments in court, you must file a petition within 90 days from the date this letter. During this 90-day period, no other partner may file a petition for judicial review. You can file your petition for readjustment of partnership items with:

1. the United States Tax Court;
2. the United States Court of Federal Claims; or
3. the District Court of the United States, in the district of the partnership's principal place of business.

A petition filed by the TMP precludes all other actions. If the TMP doesn't file a petition by the 90th day from the date the FPAA was mailed, any partner or any 5 percent group entitled to receive this notice may petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership. The petition must be filed after the 90th day, but on or before the 150th day from the date the FPAA was mailed to the TMP. If more that one petition is filed in Tax Court, the first petition will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed.

Petitions filed with the United States Tax Court must be mailed to:

**United States Tax Court**
**400 Second Street, NW**
**Washington, DC 20217**

Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court cannot consider your case if your petition is filed late. If this letter is addressed to both a husband and wife and both want to petition the Tax Court, both must sign the petition or each must file a separate signed petition.

When a partner (including each member of a 5 percent group that files a petition) files a petition in either the appropriate District Court or the Court of Federal Claims, the partner filing the petition must deposit the amount that the partner's tax liability would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items under the FPAA. If you reported the partnership items the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro rata share of the partnership adjustments into account in recomputing your tax. You must deposit the appropriate amount with the IRS on or before the day you file your petition.

**3. If you do nothing:**

If a petition for readjustment is not filed in any of the courts listed in this letter, the FPAA becomes final, and we will bill you for any additional tax plus interest that you may owe under the FPAA. You will not be permitted to contest the treatment of the partnership items of the partnership under the FPAA in any refund claim or suit. The law allows the Service to bill you 150 days from the mailing date of the FPAA to the TMP.

However, if a petition is filed in the Tax Court, and the Tax Court upholds the adjustments in whole or in part, we will not bill you until the Tax Court decision is final.

You may wish to contact the TMP of the partnership or your tax advisor to discuss this matter.

If you have any questions, please write to the person whose name and address are shown in the heading of this letter. If you write, attach a copy of this letter to help identify your account. Also, include your telephone number and the most convenient time for us to call you in case we need additional information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you.

Thank you for your cooperation.

Sincerely,

Deborah L. Bennett

Deborah L. Bennett
Technical Services TM - Acting, North Atlantic

Enclosures:
Form 870-P/Form 870-PT
Copy of this letter

## FOR THE TAX MATTERS PARTNER OF THE PARTNERSHIP

If you are the Tax Matters Partner (TMP), you are entitled to make an agreement to bind non-notice partners to the treatment of the partnership items as shown on the enclosed schedule of adjustments. You must add the following statement above the signature blocks on the Form 870-P or Form 870-PT:

"The undersigned Tax Matters Partner is signing this offer on behalf of himself (herself) and all other partners whom he (she) has the authority to bind; a final agreement resulting from the co-signature of the Commissioner of Internal Revenue will be binding on all such other partners."

As the TMP, you may submit a petition, as described above for the partnership on behalf of all partners.

If you have any questions, you can call the IRS contact person at the telephone number shown in the heading of this letter. Thank you for your cooperation.

DEPARTMENT OF THE TREASURY - INTERNAL REVENUE SERVICE

| Form 870-PT (Rev. 8-2004) | Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts | IN REPLY REFER TO: SE:S:E:TS:NAA-1 |
|---|---|---|

| Taxpayer(s) name(s), address and ZIP code: | Name of Partnership: | Tax Year(s) Ended: |
|---|---|---|
| Harry D. Murphy and<br>Lynn C. Murphy<br>PO Box 970<br>Rose Hill, NC 28458 | PSM Farms, LLC<br>Taxpayer Identifying Number:<br>56-2198330 | December 27, 2000 |
| Taxpayer Identifying Number: 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 | Name of Tax Matters Partner: | |

## Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts
## &
## Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached schedule of adjustments.

The undersigned taxpayer(s), in accordance with section 6224(b) and 6213(d), also waive the restrictions provided by sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as determined in this agreement, plus any interest provided by law.

This agreement is conditional and will not become effective or final until this agreement form is returned to the Commissioner and is signed on his or her behalf. The one-year extension of the period of limitations on assessment under IRC section 6229(f) will not begin to run until the date the Commissioner's representative signs this form on the Commissioner's behalf. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted.

| | |
|---|---|
| Signature of taxpayer | Date Signed |
| Signature of taxpayer | Date Signed |
| By (Signature and title) | Date Signed |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
|---|---|---|
| | Office | Title |

Agreement for Partnership Items and Partnership Level Determinations
as to Penalties, Additions to Tax, and Additional Amounts

SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP<br>PSM Farms, LLC<br><br>TAXPAYER IDENTIFYING NUMBER: 56-2198330 | TAX YEAR(S) ENDED<br>12/27/2000 | | |
|---|---|---|---|
| DETAIL OF ADJUSTMENTS TO ORDINARY INCOME | | | |
| a. Net Loss from Form 4797 | $738,000.00 | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTAL ADJUSTMENTS TO ORDINARY INCOME | $738,000.00 | | |
| OTHER ADJUSTMENTS | | | |
| A. ORDINARY DIVIDENDS – (Sch. K-1, Line 4b) | | | |
| (1) ADJUSTMENT | $(60.00) | | |
| (2) AS REPORTED | $60.00 | | |
| (3) CORRECTED | $0.00 | | |
| B. NET SHORT TERM GAIN – ( SCH K-1, LINE 4D) | | | |
| (1) ADJUSTMENT | $(11,560.00) | | |
| (2) AS REPORTED | $11,560.00 | | |
| (3) CORRECTED | $0.00 | | |

REMARKS

Reference Exhibit A attached.

Accuracy Penalties under IRC Section 6662 are included as a partnership level determination. See Exhibit A, paragraph 10 for a description of the penalties.

| NAME OF PARTNERSHIP | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| PSM Farms, LLC<br>TAXPAYER IDENTIFYING NUMBER 56-2198330 | 12/27/2000 | | |
| C. INVESTMENT INCOME INCLUDED ON LINES 4a, 4b, 4c, and 4d. (SCH. K-1, LINE 14(b)(1) | | | |
| (1) ADJUSTMENT | $(60.00) | | |
| (2) AS REPORTED | $60.00 | | |
| (3) CORRECTED | $0.00 | | |
| D. TAX EXEMPT INTEREST INCOME – (SCH. K-1, LINE 19) | | | |
| (1) ADJUSTMENT | $(9,836.00) | | |
| (2) AS REPORTED | $9,836.00 | | |
| (3) CORRECTED | $0.00 | | |
| E.) CAPITAL CONTRIBUTIONS (SCH M-2, LINE 2) | | | |
| (1) ADJUSTMENT | * | | |
| (2) AS REPORTED | * | | |
| (3) CORRECTED | * | | |
| F. DISTRIBUTIONS OF PROPERTY OTHER THAN MONEY (SCH K-1, LINE 23) | | | |
| (1) ADJUSTMENT | * | | |
| (2) AS REPORTED | * | | |
| (3) CORRECTED | * | | |
| G. DISTRIBUTIONS OF MONEY – (SCH K-1, LINE 22) | | | |
| (1) ADJUSTMENT | * | | |
| (2) AS REPORTED | * | | |
| (3) CORRECTED | * | | |
| H. OUTSIDE PARTNERSHIP BASIS | | | |
| (1) ADJUSTMENT | * | | |
| (2) AS REPORTED | * | | |
| (3) CORRECTED | * | | |

REMARKS:

* Reference Exhibit A attached.

Accuracy Penalties under IRC Section 6662 are included as a partnership level determination. See Exhibit A, paragraph 10 for a description of the penalties.

In Re: PSM Farms, LLC
Tax Year Ending December 27, 2000

## EXPLANATION OF ITEMS

1a. **Net Loss from Form 4797** $738,000.00

It is determined that the net loss from form 4797 is $0.00 in lieu of the amount of ($738,000.00). Reference Exhibit A attached hereto.

A. **Ordinary Dividends (Sch. K-1, Line 4b)** ($60.00)

It is determined that ordinary dividends is $0.00 in lieu of the amount of $60.00. Reference Exhibit A attached hereto.

B. **Net Short Term Gain (Sch K-1, Line 4d)** ($11,560.00)

It is determined that net short gain is $0.00 in lieu of the amount of $11,560.00. Reference Exhibit A attached hereto.

C. **Investment Income Included on lines 4a, 4b, 4c, and 4d. (Sch. K-1, Line 19)** ($60.00)

It is determined that investment income is $0.00 in lieu of the amount of $60.00 Reference Exhibit A attached hereto.

D. **Tax Exempt Interest Income – (Sch K-1, Line 19)** ($9,836.00)

H. **Outside Partnership Basis**

It is determined that the outside partnership basis is disallowed. Reference Exhibit A attached hereto.

EXHIBIT A – Explanation of Items
PSM Farms, LLC
FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT LETTER
Tax Year Ended 12/27/2000 TIN: 56-2198330

1. It is determined that neither PSM Farms, LLC (PSM Farms) nor its purported partners have established the existence of PSM Farms as a partnership as a matter of fact.

2. Even if PSM Farms existed as a partnership, the purported partnership was formed and availed of solely for purposes of tax avoidance by artificially overstating basis in the purported partnership interests of its purported partners. The formation of PSM Farms, the acquisition of any interest in the purported partnership by the purported partners, the purchase of offsetting options, the transfer of offsetting options to a purported partnership in return for a purported partnership interest, the purchase of assets by the purported partnership, and the distribution of those assets to PSM, Inc. in complete liquidation of the purported partnership interests, and the subsequent sale of those assets to generate a loss, all within a period of less than 9 months, had no business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes. Accordingly, the purported partnership and the transactions described above shall be disregarded in full and: (1) any purported losses resulting from these transactions are not allowable as deductions and (2) increases in basis of assets are not allowed to eliminate gain for federal income tax purposes.

3. It is determined that PSM Farms was a sham, lacked economic substance and, under § 1.701-2 of the Income Tax Regulations, was formed and availed of in connection with a transaction or transactions in taxable year 2000 a principal purpose of which was to reduce substantially the present value of its purported partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code. It is consequently determined that:

    a. PSM Farms is disregarded and that all transactions engaged in by the purported partnership are treated as engaged in directly by its purported partners. This includes the determination that the assets purportedly acquired by PSM Farms, including but not limited to foreign currency options, were acquired directly by the purported partners.

b. the foreign currency options, purportedly contributed to or assumed by PSM Farms, are treated as never having been contributed to or assumed by said purported partnership and any gains or losses purportedly realized by PSM Farms on the options are treated as having been realized by its partners.
c. the purported partners of PSM Farms should be treated as not being partners in PSM Farms.
d. contributions to PSM Farms, a purported partnership, will be adjusted to reflect clearly the purported partnership's or purported partners' income.

4. It is determined that the obligations under the sold option positions transferred to PSM Farms constitute liabilities for purposes of Treasury Regulation §1.752-6, the assumption of which by PSM Farms shall reduce the purported partners' bases in PSM Farms in the amounts of $11,640,000 for Harry D. Murphy, $6,111,000 for Marc D. Murphy, and $6,111,000 for Stratton K. Murphy, but not below the fair market value of the purported partnership interests.

5. It is determined that neither PSM Farms nor its purported partners entered into the options positions, acquired North Carolina State bonds, or purchased stock with a profit motive for purposes of § 165(c)(2).

6. It is also determined the economically offsetting option positions constitute an arrangement under §465(b)(4) to limit the exposure to risk of loss and that neither PSM Farms nor its purported partners established any other amounts considered to be at risk for purposes of §465 that would allow the purported partners to deduct losses arising from or in connection with PSM Farms.

7. It is determined that, even if the foreign currency options are treated as having been contributed to PSM Farms, the amount treated as contributed by the purported partners under section 722 of the Internal Revenue Code is reduced by the amounts received by the contributing partners from the contemporaneous sales of the call options to the same counter-party. Thus, the basis of the contributed options is reduced, both in the hands of the contributing partners and PSM Farms. Consequently, any corresponding claimed increases in the outside basis in PSM Farms resulting from the contributions of the foreign currency options are disallowed.

8. It is determined that the adjusted bases of the purchased option positions and other contributions purportedly contributed by the purported partners to PSM Farms have not been established under I.R.C. § 723. It is consequently determined that the purported

partners of PSM Farms have not established adjusted bases in their respective purported partnership interests in an amount greater than zero (-0-).

9. It is further determined that, in the case of a sale, exchange, or liquidation of PSM Farms purported partners' partnership interests, neither the purported partnership nor its purported partners have established that the bases of the purported partners' partnership interests were greater than zero for purposes of determining gain or loss to such purported partners from the sale, exchange, or liquidation of such purported partnership interest.

10. Accuracy-Related Penalties

It is determined that the adjustments of partnership items of PSM Farms are attributable to a tax shelter for which no substantial authority has been established for the position taken, and for which there was no showing of reasonable belief by the purported partnership or its partners that the position taken was more likely than not the correct treatment of the tax shelter and related transactions. In addition, all of the underpayments of tax resulting from those adjustments of partnership items are attributable to, at a minimum,

(1) substantial understatements of income tax, (2) gross valuation misstatement(s), or (3) negligence or disregarded rules or regulations. There has not been a showing by the purported partnership or any of its purported partners that there was reasonable cause for any of the resulting underpayments, that the purported partnership or any of its purported partners acted in good faith, or that any other exceptions to the penalty apply. It is therefore determined that, at a minimum, the accuracy-related penalty under Section 6662(a) of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items of PSM Farms. The penalty shall be imposed on the components of underpayment as follows:

A. a 40 percent penalty shall be imposed on the portion of any underpayment attributable to the gross valuation misstatement as provided by Sections 6662(a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.
B. a 20 percent penalty shall be imposed on the portion of the underpayment attributable to negligence or disregard of rules and regulations as provided by Sections 6662(a), 6662(b)(1), 6662(c) of the Internal Revenue Code.
C. a 20 percent penalty shall be imposed on the underpayment attributable to the substantial understatement of income tax as

provided by sections 6662(a), 6662(b)(2), and 6662(d) of the Internal Revenue Code.

D. a 20 percent penalty shall be imposed on the underpayment attributable to the substantial valuation misstatement as provided by Sections 6662(a), 6662(b)(3), and 6662(e) of the Internal Revenue Code.

It should not be inferred by the determination of the Accuracy Related Penalty in this notice that fraud penalties will not be sought on any portion of an underpayment subsequently determined to be attributable to fraud or that prosecution for criminal offenses will not be sought under IRC § 7201, 7206 or other provisions of federal law if determined to be appropriate.

**Internal Revenue Service**
JFK PO Box 9112
Stop 41100
Boston, MA 02203

**Department of the Treasury**

**Untimely Notice Letter -**
**TEFRA Proceeding is Ongoing**

Partner Identifying Number: 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

Name of Partnership: PSM Farms, LLC

Partnership Identifying Number: 56-2198330

Tax Year Ended: December 27, 2000

Date FPAA Mailed to the Tax Matters Partner:

DEC 1 5 2005

Person to Contact: Mr. J. Heinlin
Employee Number: 04-03576

Contact Telephone Number: (617) 316-2421
(not a toll free number)

Contact Hours: 8:00 AM - 4:30 PM (Monday - Friday)

Date: DEC 1 5 2005

Harry D. Murphy and
Lynn C. Murphy
PO Box 970
Rose Hill, NC 28458

Dear Taxpayer:

We have mailed to you a notice of beginning of administrative proceeding and a notice of final partnership administrative adjustment on the above-named partnership. However, we were unable to mail one or both of these notices to you within the time required under Section 6223(d) of the Internal revenue Code. Therefore, you have the right under Section 6223(e)(3)(B) of the Internal Revenue Code to elect to have your items in the partnership treated as nonpartnership items. If you make this election, you will no longer be treated as a partner for the purpose of any further partnership proceedings whether pursued through this office or through the Courts.

If you desire to elect out of the partnership proceedings and to have your interest in the partnership items treated as nonpartnership items, you must file a statement of the election with this office within 45 days from the date of this letter. It is required that the statement:

(1) Be clearly identified as an election under section 6223(e)(3);
(2) Specify the election being made (that is, nonpartnership item treatment);
(3) Identify the partner making the election and the partnership by name, address and taxpayer identification number;
(4) Specify the partnership taxable year to which the election relates; and
(5) Be signed by the partner making the election per Treasury Regulation § 301.6223(e)-2.

Should you have any questions, please contact the person whose name and address are shown above.

Sincerely yours,

Deborah L. Bennett

Deborah L. Bennett
Technical Services TM - Acting, North Atlantic

MEADOWS, OWENS, COLLIER, REED, COUSINS & BLAU, L.L.P.
ATTORNEYS AT LAW
A REGISTERED LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
901 MAIN STREET, SUITE 3700
DALLAS, TEXAS 75202
(214) 744-3700
www.meadowsowens.com

JOEL N. CROUCH, P.C. - Partner
DIRECT DIAL (214) 749-2456
jcrouch@meadowsowens.com

FAX (214) 747-3732
WATS (800) 451-0093

April 5, 2005

INTERNAL REVENUE SERVICE
DIRECTOR
RECEIVED
APR 6 2005
Exam, South Atlantic, SBSE Div.
Wilmington, NC
100418

VIA FEDERAL EXPRESS

Mr. Jerry Arthur
Revenue Agent
Internal Revenue Service
3904 Oleander Drive
Suite 200
Wilmington, North Carolina 28403

Re: Cash Deposit Under IRC § 6603
Harry D. Murphy (Social Security No. 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) and Lynn C. Murphy (Social Security No. 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)

Dear Mr. Arthur:

Pursuant to Section 4 of Revenue Procedure 2005-18, the above-referenced Taxpayers hereby designate the enclosed deposit in the amount of $3,500,000.00 as deposit under § 6603 (the "deposit"). This deposit should not be considered a concession by the Taxpayers of any issues. Pursuant to § 7 of Revenue Procedure 2005-18, the following statement of disputable tax is provided for the full amount of the deposit:

1. The deposit relates to the Taxpayers' federal income tax for the 2000 tax year. The deposit allocable to the year as follows:

| Tax Year | Tax | Penalty | Interest | Total |
|---|---|---|---|---|
| 2000 | $2,634,667.00 | $469,208.00 | $383,924.00 | $3,487,799.00 |

2. Calculation of the Amount of Disputable Tax. Because the Taxpayers dispute any tax liability attributable to the disallowance of this loss under IRS Announcement 2000-44, the entire amount of the deposit represents disputable tax.

EXHIBIT
B

3. **Basis for the Dispute**. The basis for the dispute is that the Taxpayers believe the loss is properly reported on their tax return. The Taxpayers had a reasonable basis for the tax treatment of the items described above because the Taxpayers were advised by highly competent tax, accounting and legal professionals to participate in the transaction. The Taxpayers were also advised that the tax treatment of the transaction would more likely than not be upheld if reviewed by the Internal Revenue Service.

Please return a file stamped copy of this letter in the enclosed self-addressed stamped envelope.

If you have any questions, please do not hesitate to contact me at the above number.

Very truly yours,

JOEL N. CROUCH, P.C.

By: [signature]
Joel N. Crouch, President

JNC/kme/317500
Enclosures
cc: Mr. Brewer Ezell

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

**OFFICIAL CHECK**

23-97
1020

762926891

0001608

04/01/2005

**WACHOVIA**

534432 (100/pkg Rev 02)

Pay To The Order Of ***US Treasury***

$ $3,500,000.00

*THREE MILLION FIVE HUNDRED THOUSAND DOLLARS AND 00 CENTS

Dollars

DRAWER: Wachovia Bank, National Association

Security Features Details on Back

Harry D. Murphy SSN. 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
Lynn C. Murphy SSN 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

Remitter

Authorized Signature

MP

Issued by Integrated Payment Systems Inc., Englewood, Colorado
Bank One, NA, Denver, Colorado

⑈350927⑈ ⑆102000979⑆ 68007629268914⑈

MEADOWS, OWENS, COLLIER, REED, COUSINS & BLAU, L.L.P.
ATTORNEYS AT LAW
A REGISTERED LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
901 MAIN STREET, SUITE 3700
DALLAS, TEXAS 75202
(214) 744-3700
www.meadowsowens.com

JOEL N. CROUCH, P.C. - Partner
DIRECT DIAL (214) 749-2456
jcrouch@meadowsowens.com

FAX (214) 747-3732
WATS (800) 451-0093

April 5,2005

INTERNAL REVENUE SERVICE
DIRECTOR
RECEIVED
APR 6 2005
Exam, South Atlantic, SBSE Div.
Wilmington, NC
100418

VIA FEDERAL EXPRESS

Mr. Jerry Arthur
Revenue Agent
Internal Revenue Service
3904 Oleander Drive
Suite 200
Wilmington, North Carolina 28403

Re: Cash Deposit Under IRC § 6603
Marc D. Murphy (Social Security No. 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)

Dear Mr. Arthur:

Pursuant to Section 4 of Revenue Procedure 2005-18, the above-referenced Taxpayer hereby designates the enclosed deposit in the amount of $1,440,000.00 as deposit under § 6603 (the "deposit"). This deposit should not be considered a concession by the Taxpayer of any issues. Pursuant to § 7 of Revenue Procedure 2005-18, the following statement of disputable tax is provided for the full amount of the deposit:

1. The deposit relates to the Taxpayer's federal income tax for the 2000 tax year. The deposit allocable to the year as follows:

| Tax Year | Tax | Penalty | Interest | Total |
|---|---|---|---|---|
| 2000 | $1,085,153.00 | $189,292.00 | $157,714.00 | $1,432,159.00 |

2. **Calculation of the Amount of Disputable Tax**. Because the Taxpayer disputes any tax liability attributable to the disallowance of this loss under IRS Announcement 2000-44, the entire amount of the deposit represents disputable tax.

3. **Basis for the Dispute**. The basis for the dispute is that the Taxpayer believes the loss is properly reported on his tax return. The Taxpayer had a reasonable basis for the tax treatment of the items described above because the Taxpayer was advised by highly competent tax, accounting and legal professionals to participate in the transaction. The Taxpayer was also advised that the tax treatment of the transaction would more likely than not be upheld if reviewed by the Internal Revenue Service.

Please return a file stamped copy of this letter in the enclosed self-addressed stamped envelope.

If you have any questions, please do not hesitate to contact me at the above number.

Very truly yours,

JOEL N. CROUCH, P.C.

By: [signature]
Joel N. Crouch, President

JNC/kme/317504
Enclosures
cc: Mr. Brewer Ezell

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

OFFICIAL CHECK

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

23-97
1020

762926893

0001608

04/01/2005

WACHOVIA

534432 (100/pkg Rev 02)

Pay To The Order Of ***US Treasury*** $ $1,440,000.00

*ONE MILLION FOUR HUNDRED FORTY THOUSAND DOLLARS AND 00 CENTS Dollars

DRAWER: Wachovia Bank, National Association

Security Features Details on Back.

Marc D. Murphy SSN 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

Remitter

Authorized Signature

MP

Issued by Integrated Payment Systems Inc., Englewood, Colorado
Bank One, NA, Denver, Colorado

⑈350927⑈ ⑆102000979⑆ 6800762926893⑈

MEADOWS, OWENS, COLLIER, REED, COUSINS & BLAU, L.L.P.
ATTORNEYS AT LAW
A REGISTERED LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
901 MAIN STREET, SUITE 3700
DALLAS, TEXAS 75202
(214) 744-3700
www.meadowsowens.com

JOEL N. CROUCH, P.C. - Partner
DIRECT DIAL (214) 749-2456
jcrouch@meadowsowens.com

FAX (214) 747-3732
WATS (800) 451-0093

April 5, 2005

INTERNAL REVENUE SERVICE
DIRECTOR
RECEIVED
APR 6 2005
Exam, South Atlantic, SBSE Div.
Wilmington, NC
100418

VIA FEDERAL EXPRESS

Mr. Jerry Arthur
Revenue Agent
Internal Revenue Service
3904 Oleander Drive
Suite 200
Wilmington, North Carolina 28403

Re: Cash Deposit Under IRC § 6603
Stratton K. Murphy (Social Security No. 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)

Dear Mr. Arthur:

Pursuant to Section 4 of Revenue Procedure 2005-18, the above-referenced Taxpayer hereby designates the enclosed deposit in the amount of $1,440,000.00 as deposit under § 6603 (the "deposit"). This deposit should not be considered a concession by the Taxpayer of any issues. Pursuant to § 7 of Revenue Procedure 2005-18, the following statement of disputable tax is provided for the full amount of the deposit:

1. The deposit relates to the Taxpayer's federal income tax for the 2000 tax year. The deposit allocable to the year as follows:

| Tax Year | Tax | Penalty | Interest | Total |
|---|---|---|---|---|
| 2000 | $1,085,318.00 | $189,377.00 | $157,744.00 | $1,432,439.00 |

2. **Calculation of the Amount of Disputable Tax**. Because the Taxpayer disputes any tax liability attributable to the disallowance of this loss under IRS Announcement 2000-44, the entire amount of the deposit represents disputable tax.

3. **Basis for the Dispute**. The basis for the dispute is that the Taxpayer believes the loss is properly reported on his tax return. The Taxpayer had a reasonable basis for the tax treatment of the items described above because the Taxpayer was advised by highly competent tax, accounting and legal professionals to participate in the transaction. The Taxpayer was also advised that the tax treatment of the transaction would more likely than not be upheld if reviewed by the Internal Revenue Service.

Please return a file stamped copy of this letter in the enclosed self-addressed stamped envelope.

If you have any questions, please do not hesitate to contact me at the above number.

Very truly yours,

JOEL N. CROUCH, P.C.

By: [signature]
Joel N. Crouch, President

JNC/kme/317502
Enclosures
cc: Mr. Brewer Ezell

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

OFFICIAL CHECK

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

23-97
1020

762926892

0001608

WACHOVIA

04/01/2005

Pay To The Order Of ***US Treasury***

$ $1,440,000.00

*ONE MILLION FOUR HUNDRED FORTY THOUSAND DOLLARS AND 00 CENTS Dollars

DRAWER: Wachovia Bank, National Association

Stratton K. Murphy SSN 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

Remitter

Authorized Signature

Issued by Integrated Payment Systems Inc., Englewood, Colorado
Bank One, NA, Denver, Colorado

Security Features Details on Back.

MP

534432 (100/pkg Rev. 02)

⑈350927⑈ ⑆102000979⑆ 6800762926892 3⑈