IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Case No. 06-246T
(Chief Judge Damich)

_____

PSM Farms, LLC, By and Through
Stratton K. Murphy, a Partner Other  Than Tax Matters Partner,

Plaintiff,

v.

United States of America,

Defendant.

**ANSWER**

Defendant, United States of America, in answer to the Complaint for

Readjustment of Partnership Items, respectfully denies each and every allegation

therein not expressly admitted below, and answers the individually numbered

paragraphs set forth in the Complaint for Readjustment of Partnership Items, which are

restated herein, as follows:

**I.**

1.      Plaintiff Stratton K. Murphy is a U.S. citizen and resident of the State of North
        Carolina, with social security number ▮▮▮▮▮▮▮.  Mr. Murphy's mailing
        address is 4134 U.S.  Highway # 117, Rose Hill, NC 28458.  At all relevant times
        herein, Mr. Murphy was the sole owner of SKM Ventures, LLC ("SKMV"), a
        Delaware limited liability company and an entity disregarded as separate from
        Mr. Murphy for federal income tax purposes.  SKMV's federal employer

1

1838290.1

identification number is 56-2198466, and its principal place of business is located at 4134 U.S. Highway # 117, Rose Hill, NC 28458.  Before distributing its interest in PSM Farms, LLC to Mr. Murphy in August of 2000, SKMV owned a 25.61% membership interest therein.  From and after that time, Mr. Murphy owned the 25.61% membership interest in PSM Farms, LLC.

ANSWER:  Defendant admits that Stratton K. Murphy is a U.S. citizen and resident of

the State of North Carolina, with a social security number of ███████ a mailing

address at 4134 U.S. Highway #117, Rose Hill, NC 28458.  Defendant further admits

that Stratton K. Murphy purports to be the sole owner of SKM Ventures, LLC ("SKMV"),

which in turn purports to be a single member limited liability company disregarded as

separate from Stratton K. Murphy for federal income tax purposes.  The United States

denies that SKMV was engaged in a business and therefore had no principal place of

business. Defendant admits that SKMV was assigned the employer identification

number 56-2198466.  The remaining allegations contained in paragraph 1 are denied.


2.    Plaintiff Stratton K. Murphy is a Notice Partner of PSM Farms, LLC within the meaning of Section 6231(a)(8) of the Code.

ANSWER: Admits.

3.    Harry D. Murphy is a U.S. citizen and resident of the State of North Carolina, with social security number ███████ Mr. Murphy's mailing address is 4134 U.S. Highway # 117, Rose Hill, NC 28458.  At all relevant times herein, Mr. Murphy was the sole owner of HDM, LLC ("HDM"), a Delaware limited liability company and an entity disregarded as separate from Mr. Murphy for federal income tax purposes.  HDM's federal employer identification number is 56-2198334, and its principal place of business is located at 4134 U.S. Highway # 117, Rose Hill, NC 28458.  Before distributing its interest in PSM Farms, LLC to Mr. Murphy in August of 2000, HDM owned a 48.78% membership interest therein.  From and after that time, Mr. Murphy owned the 48.78% membership interest in PSM Farms, LLC.  Mr. Murphy is a proper party to this proceeding pursuant to Section 6226(c) of the Code.

1838290.1

ANSWER:  Defendant admits that Harry D. Murphy is a U.S. citizen and resident of

the State of North Carolina with social security number ████████ and a mailing

address at 4143 U.S. Highway # 117, Rose Hill, NC 28458.  Defendant admits that

Harry D. Murphy purported to be the sole owner of HDM, LLC ("HDM"), which in turn

purported to be a limited liability company and an entity disregarded as separate from

Harry D. Murphy for federal income tax purposes.  Defendant admits that HDM was,

upon application to the Internal Revenue Service, assigned the employer identification

number 56-2198334.  The United States denies that HDM was engaged in a business

and therefore had no principal place of business.  Defendant denies knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in

paragraph 3 except notes that whether Harry D. Murphy is a proper party to this

proceeding pursuant to 6226(c) of the Code is a question of law to which no response is

required.


4.    Harry D. Murphy is the Tax Matters Partner of PSM Farms, LLC.

ANSWER: Admits.


5.    Marc D. Murphy is a U.S. citizen and resident of the State of North Carolina, with
social security number ████████  Mr. Murphy's mailing address is 4134 U.S.
Highway #117, Rose Hill, NC 28458.  At all relevant times herein, Mr. Murphy
was the sole owner of MDM Ventures, LLC ("MDMV"), a Delaware limited liability
company and an entity disregarded as separate from Mr. Murphy for federal
income tax purposes.  MDMV's federal employer identification number is 56-
2198337, and its principal place of business is located at 4134 U.S. Highway #

1838290.1

117, Rose Hill, NC 28458.  Before distributing its interest in PSM Farms, LLC to
Mr.  Murphy in August of 2000, MDMV owned a 25.61% membership interest
therein.  From and after that time, Mr. Murphy owned the 25.61% membership in
PSM Farms, LLC.  Mr. Murphy is a proper party to this proceeding pursuant to
Section 6226(c) of the Code.

ANSWER:  Defendant admits that Marc D. Murphy is a U.S. citizen and resident of

the State of North Carolina with social security number ███████████ a mailing

address at 4143 U.S. Highway # 117, Rose Hill, NC 28458.  Defendant admits that

Marc D. Murphy purported to be the sole owner of MDM Ventures, LLC ("MDMV"),

which in turn purported to be a limited liability company and an entity disregarded as

separate from Marc D. Murphy for federal income tax purposes.  Defendant admits that

MDMV was, upon application to the Internal Revenue Service, assigned the employer

identification number 56-2198337.  The United States denies that MDMV was engaged

in a business and therefore had no principal place of business.  Defendant denies

knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 5 except notes that whether Marc D. Murphy is a proper party

to this proceeding pursuant to 6226(c) of the Code is a question of law to which no

response is required.


6.    Stratton K. Murphy, Harry D. Murphy, and Marc D. Murphy are collectively
      referred to herein sometimes as the "Partners."  Relatedly, because each is
      regarded as an entity separate from their sole owner, SKMV, HDM, and MDMV
      are also collectively referred to herein sometimes as the "Partners."

ANSWER:  Defendant notes that paragraph 6 does not purport to state any facts

regarding this case and that therefore no response is required.

4

7.     PSM Farms, LLC (the "Partnership") is a Delaware limited liability company, with federal employer identification number 56-2198330.  Its principal place of business is located at 4134 U.S. Highway # 117, Rose Hill, NC 28458.

ANSWER:  Defendant admits that PSM Farms, LLC (the "purported Partnership") purports to be a Delaware limited liability company and that it was, upon application to the Internal Revenue Service, assigned the employer identification number 56-2198330. The remaining allegations in paragraph 7 are denied, including, but not limited to, the implicit inference that PSM Farms, LLC was a partnership.  The United States states that the purported Partnership is a factual sham and that, even if it did exist, this entity is disregarded for federal tax purposes because it had no business purpose, and also states that the purported Partnership, even if it did exist, was created as a sham entity as a step in a prearranged plan and is thus also disregarded for federal income tax purposes under the step transaction doctrine, and also states that this entity, if it did exist, was created for a purpose which was inconsistent with the intent of Subchapter K of the Internal Revenue Code.  The United States further states that the purported Partnership was not engaged in a business and, thus, had no principal place of business.


8.     The Partnership timely filed its partnership return (IRS Form 1065) for tax year ended December 27, 2000 with the Internal Revenue Service Center located in Cincinnati, Ohio.

ANSWER: Admits.

1838290.1

9.      On December 15, 2005, the Commissioner of Internal Revenue (the
        "Commissioner") issued a Notice of Final Partnership Administrative Adjustment
        (the "FPAA") against the Partnership for tax year ended December 27, 2000.  A
        copy of the FPAA is attached hereto as Exhibit "A."  The Commissioner issued
        the FPAA to Plaintiff – and other parties hereto – from the following address:
        Internal Revenue Service ("IRS"), JFK P.O. Box 9112, Stop 41100, Boston, MA
        02203.

ANSWER:  Defendant admits that on December 15, 2005, a Notice of Final Partnership

Adjustment ("FPAA") was sent by certified mail to the tax matters partner of the

purported Partnership.  It is further admitted that the FPAA was sent by the Internal

Revenue Service (the "IRS") from its offices with the postal address of P.O. Box 9112,

Stop 41100, Boston, MA 02203, and that a copy of the FPAA is attached to the

Complaint as Exhibit "A".  Defendant objects to the remaining allegations contained on

paragraph 9 upon the ground that they are vague and/or ambiguous.


10.     The proposed adjustment set forth in the FPAA would result in deficiencies for
        the Partners for tax year 2000 because each Partner was a partner in the
        Partnership for the tax year at issue, as described above.

ANSWER:  Defendant objects to the allegations contained in paragraph 10 upon the

ground that they are vague and/or ambiguous.  To the extent that a response is

required, the allegations are denied.


11.     Harry D. Murphy, as Tax Matters Partner of the Partnership, did not file a petition
        with the Tax Court or a complaint with either the applicable federal district court
        or this Court within ninety days after the day on which the FPAA was mailed to
        him as Tax Matters Partner.

ANSWER: Admits.

1838290.1

12.     Plaintiff Stratton K. Murphy, as a Notice Partner of the Partnership, is filing this Complaint on behalf of the Partnership within sixty days following the expiration of the ninety-day period set forth in Code Section 6226(a).

ANSWER: Admits.

13.     According to Code Section 6226(b), 6226(c), and 6226(d), Plaintiff has standing to bring this Complaint.

ANSWER:  Defendant admits that plaintiff PSM Farms, LLC, has standing to bring this

Complaint.  The remaining allegations contained in paragraph 13 are allegations of law

to which no response is required.

## II.

14.     Defendant is The United States of America and may be served – pursuant to Rule  4 of the Rules of the United States Court of Federal Claims – through delivery by the Clerk of the United States Court of Federal Claims to the U.S. Attorney General of five copies of the Complaint.

ANSWER:  Defendant admits that it is the United States of America and states that no

response is required to the remaining allegations contained in paragraph 14.

## III.

15.     This is a civil action arising under Section 6226(b) of the Code for the redetermination of final partnership administrative adjustments to the Partnership's Form 1065 return for tax year ended December 27, 2000, as set forth by the Commissioner in the FPAA.

ANSWER:  Defendant admits that this is a civil action arising under Section 6226(a) of

the Code for the redetermination of the final partnership administrative adjustments to

1838290.1

the Partnership's Form 1065 income tax return for that tax year ended December 27,

2000, as set forth by the Commissioner in the FPAA.  The remaining allegations are

denied.

16.    The Commissioner erroneously determined that: (a) the form of the transactions
       at the issue should be recharacterized or disregarded under a number of different
       theories; (b) the Partnership should be disregarded as a partnership for federal
       income tax purposes; and (c) several corresponding adjustments should be
       made to the Partners' federal tax liabilities.  Moreover, the Commissioner
       erroneously determined that penalties under Code Section 6662 should be
       imposed.

ANSWER:  Defendant admits that the Commissioner determined, inter alia, that: (a) the

form of the transactions at issue should be recharacterized or disregarded under a

number of different theories; (b) the purported Partnership should be disregarded as a

partnership for federal income tax purposes; and (c) several corresponding adjustments

should be made to the purported Partners' tax liabilities.  It is denied that these

determinations were erroneous.


**IV.**

17.    Section 6226(b) and 6226(c) of the Code and 28 U.S.C. §§ 1346(a)(1) and 1508
       confer jurisdiction on this Court.

ANSWER:  Jurisdiction, to the extent that it exists, is founded upon 28 U.S.C. § 1508.

1838290.1

18.     For jurisdiction purposes, the Partners have complied with the requirements of Code Section 6226(e) by depositing the amount by which their federal income tax liability would be increased if treatment of the Partnership items on their tax returns for the tax year at issue were made consistent with the treatment of partnership items on the Partnership's tax return as adjusted by the Commissioner in the FPAA.

ANSWER:  Defendant admits that the purported Partners have deposited the amount sufficient to satisfy the deposit requirement.  The remaining allegations are issues of law to which no response is required.

19.     The Partners have made the following deposits:

| Partner | | Deposit Amounts |
|---|---|---|
| Harry D. Murphy | | $3,275,710 |
| Marc C. Murphy | | $1,440,000 |
| Stratton K, Murphy | | $1,440,000 |

ANSWER: Admits.

20.     True and correct copies of the deposits sent to the IRS are attached to this Complaint as Exhibit "B."[1]

ANSWER: Admits.

**V.**

21.     After consultation with – and obtaining the advice, guidance, and counsel of – qualified tax professionals, the Partners entered into the following transactions (the "Transactions"), which provide the basis for the issues in this case.

---

[1]In the attached documents, the deposit for Harry D. Murphy includes an amount in addition to the deposit amount set forth above, which relates to another transaction entered into by the taxpayer during the same tax year and disputed by the Internal Revenue Service.

9

ANSWER:  No response is required with respect to the allegations contained in

paragraph 21.  To the extent a response is required, Defendant is presently without

knowledge or information sufficient to form a belief as to the truth of the allegation

contained in paragraph 21.

22.    As of April 14, 2000, the Partners entered into certain over-the-counter, non-
       publicly traded European-style foreign currency option positions on the EURO
       and Swiss Franc, as applicable (collectively the "Options"), with Deutsche Bank
       AG New York Branch (the "Bank"), with each Partner purchasing an Option and
       selling an Option.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 22.

23.    HDM  purchased – for a premium of $12,000,000.00 – an Option on the U.S.
       EURO/U.S. Dollar exchange rate with a strike price of .9207 USD per 1.00
       EURO, an expiration date of June 13, 2000, and a final exchange amount of
       $24,000,000.00.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 23.

24.    MDMV purchased – for a premium of $6,300,000.00 – an Option on the U.S.
       Dollar/Swiss Franc exchange rate with a strike price of 1.5839 CHF per 1.00
       USD, an expiration date of June 13, 2000, and a final exchange amount of
       $12,600,000.00.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 24.

1838290.1

25.    SKMV purchased – for a premium of $6,300,000.00 – an Option on the U.S. Dollar/Swiss Franc exchange rate with a strike price of 1.5839 CHF per 1.00 USD, an expiration date of June 13, 2000, and a final exchange amount of $12,600,000.00.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 25.

26.    The Options described in paragraphs 23 through 25 above are referred to herein as the "Long Options."

ANSWER:  Paragraph 26 does not allege any fact regarding this matter and thus no

response is required.

27.    HDM sold – for a premium of $11,640,000.00 – an Option on the EURO/U.S. Dollar exchange rate with a strike price of .9205 USD per 1.00 EURO, an expiration date of June 13, 2000, and a final exchange amount of $23,190,000.0.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 27.

28.    MDMV sold – for a premium of $6,111,000.00 – an Option on the U.S. Dollar/Swiss Franc exchange rate with a strike price of 1.5837 CHF per 1.00 USD, an expiration date of June 13, 2000, and a final exchange amount of $12,174,750.00.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 28.

1838290.1

29.     SKMV sold – for a premium of $6,111,000.00 – an Option on the U.S. Dollar/Swiss Franc exchange rate with a strike price of 1.5837 CHF per 1.00 USD, an expiration date of June 13, 2000, and a final exchange amount of $12,174,750.00.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 29.

30.     The Options described in paragraphs 27 through 29 above are referred to herein as the "Short Options" (and collectively with the Long Options, the Options).

ANSWER:  Paragraph 30 does not allege any fact in this matter and therefore no

response is required.

31.     As of April 17, 2000, each of the Partners contributed their respective Options (including their Long Options and Short Options) to the Partnership as contributions of capital.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 31.

32.     On June 13, 2000, the Options held by the Partnership terminated in accordance with their terms.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 32.

33.     In August of 2000, the Partners distributed their ownership interests in the Partnership to their respective sole members.  Because the Partners are entities disregarded as separate from their sole members for federal income tax purposes, these distributions were non- events for federal income tax purposes.

1838290.1

ANSWER**:**  Defendant is presently without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 33.

34.    Throughout tax year 2000, the Partnership made numerous investments in
various publicly-traded stocks and securities.

ANSWER:  Defendant states that the purported Partnership purported to be a Delaware

Limited Liability Company and is also disregarded for federal income tax purposes and

Defendant is presently without knowledge or information sufficient to form a belief as to

the truth of the remaining allegations contained in paragraph 34.

35.    On December 5, 2000, the Partners each contributed to the Partnership as a
contribution of capital certain North Carolina municipal bonds (the "Bonds") held
by each Partner for investment purposes.

ANSWER: Defendant states that the purported Partnership purported to be a Delaware

Limited Liability Company and is also disregarded for federal income tax purposes and

Defendant is presently without knowledge or information sufficient to form a belief as to

the truth of the remaining allegations contained in paragraph 35.

36.    As of December 27, 2000, the Partners contributed their interests in the
Partnership – collectively equal to 100% of the outstanding ownership interests
therein – to PSM, Inc., a Delaware corporation (the "Corporation").

13

1838290.1

ANSWER:  Defendant admits that PSM, Inc. (the "Corporation"), purports to be a

Delaware corporation and that the purported Partners purport to have contributed their

interests in the purported Partnership to the Corporation as of December 27, 2000, but

states that both the purported Partnership and the Corporation were created as steps in

a prearranged plan to engage in transactions that are inconsistent with the intent of

Subchapter K of the Internal Revenue Code and also were shams that were availed of

solely for the purpose of effecting sham transactions and denies the remaining

allegations contained in paragraph 36.


37.     As a result of the foregoing – i.e., all of the interests in the Partnership being
        transferred to a single person, the Corporation – the Partnership liquidated and
        dissolved as a matter of law.

ANSWER:  The allegations contained in paragraph 37 are allegations of law to which no

response is required.  To the extent that a response is required, Defendant states that

both the purported Partnership and the Corporation were created as steps in a plan to

engage in transactions that are inconsistent with the intent of Subchapter K of the

Internal Revenue Code and also were shams that were availed of solely for the purpose

of effecting sham transactions and denies the remaining allegations contained in

paragraph 37.


38.     On its liquidation and dissolution, all of the Partnership's assets – including but
        not limited to the Bonds – were distributed to the Corporation as its sole owner.

1838290.1

ANSWER:  The allegations contained in paragraph 38 are allegations of law to which no

response is required.  To the extent that a response is required, Defendant states that

both the purported Partnership and the Corporation were created as steps in a plan to

engage in transactions that are inconsistent with the intent of Subchapter K of the

Internal Revenue Code and also were shams that were availed of solely for the purpose

of effecting sham transactions and denies the remaining allegations contained in

paragraph 38.


39.    As of December 29, 2000, the Corporation sold the Bonds, triggering a long-term
       capital loss for federal income tax purposes in the amount of $24,531,884.00,
       which the Corporation reported on its Form 1120S for tax year 2000.  The
       Corporation allocated this loss pro rata among its shareholders (also the
       Partners) according to their respective ownership interests in the Corporation.

ANSWER:  Defendant admits that the Bonds were sold, and admits further that the

Corporation filed a Form 1120S for tax year 2000, upon which it reported a long-term

capital loss in the amount of $24,531,884.00.  The remaining allegations contained in

paragraph 39 are allegations of law to which no response is required.  To the extent that

a response is required, the remaining allegations contained in paragraph 39 are denied.


## VI.

40.    The Partnership timely filed its Form 1065 for short tax year ended December 27,
       2000, the date of its termination and dissolution.  Ernst & Young LLP prepared
       the Partnership's tax return.

ANSWER:  Defendant admits that the purported Partnership was dissolved on

15

December 27, 2000, that the purported Partnership timely filed Form 1065 for the tax

year ending December 27, 2000, which indicates that the Form was prepared by Ernst

& Young LLP, and that the tax year ending December 27, 2000, was a short tax year.

Defendant otherwise states that the purported Partnership is disregarded for federal

income tax purposes and that Defendant is presently without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in

paragraph 40.


41.    The Corporation timely filed a Form 1120S for tax year ended December 31,
       2000, which was also prepared by Ernst & Young LLP.

ANSWER:  Defendant admits that the Form 1120S tax return filed by the Corporation

for the tax year ended December 31, 2000, indicates that it was prepared by Ernst &

Young LLP, and that it was timely.  Defendant otherwise states that the Corporation is

disregarded for federal income tax purposes and that Defendant is presently without

knowledge or information sufficient to form a belief as to the truth of the remaining

allegations contained in paragraph 41.


**VII.**

42.    The Partners and the Partnership sought and reasonably relied in good faith
       upon the advice, counsel and guidance of competent tax professionals, including
       but bot limited to the professionals at Proskauer Rose LLP and Ernest [sic] &
       Young, LLP, in determining the federal income tax consequences and proper
       reporting obligations relative to the Transactions described above before filing
       their respective federal income tax returns.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a

1838290.1

belief as to the truth of the allegations contained in paragraph 42, except states that to

the extent that the purported Partners and the purported Partnership relied on any such

advice, such reliance was unreasonable.

43.    The Partners were introduced to the Transactions by their long-time advisor
       Ernest [sic] & Young, LLP, which presented the Transactions as sound and legal
       business investments, both before and after tax considerations were taken into
       account.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 43 except states that to

the extent that the purported Partners relied on any such advice, such reliance was

unreasonable.

44.    Ernest [sic] & Young, LLP ultimately provided advice regarding all aspects of the
       Transactions, including profit potential, investment strategy, choice of entities,
       business structure, and accounting and tax reporting.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 44 except states that to

the extent that the purported Partners relied on any such advice, such reliance was

unreasonable.

1838290.1

45.     The Partners at all times considered Ernest [sic] & Young, LLP to be a qualified and independent professional entity having no interest in the Transactions other than in the capacity of  providing professional investment, accounting and tax advice.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45 except states that to the extent that the purported Partners relied on any such advice, such reliance was unreasonable.

46.     At the suggestion of Ernest [sic] & Young, LLP, the Partners obtained a written legal opinion from Proskauer Rose LLP on December 29, 2000 (the "Opinion"), wherein Proskauer Rose LLP opined, on a more-likely-than-not basis, as to the federal income tax consequences of the Transactions.  The conclusions set forth in the Opinion provided the bases for the manner in which the Transactions were reported for federal income tax purposes.

ANSWER:  Defendant is presently without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46 except states that to the extent that the purported Partners relied on any such advice, such reliance was unreasonable.

## VIII.

47.     Plaintiff incorporates paragraphs 1 through 46 as though fully set forth herein.

ANSWER:  Defendant incorporates its answers to paragraphs 1 through 46 of the Complaint as though fully set forth herein.

1838290.1

48.    By its FPAA, the Commissioner erred in determining that:

a)    The net loss from Form 4797 is $0.00 in lieu of the amount of ($738,000.00) as reported by the Partnership for short tax year ended December 27, 2000.

b)    Ordinary dividends are $0.00 in lieu of the amount of $60.00 as reported by the Partnership for tax year 2000.

c)    Net short-term gain is $0.00 in lieu of the amount of $11,560.00 as reported by the Partnership for tax year 2000.

d)    Investment income is $0.00 is lieu of $60.00 as reported by the Partnership for tax year 2000.

e)    Tax-exempt interest income is $0.00 in lieu of $9,836.00 as reported by the Partnership for tax year 2000.

f)    The Partnership's outside basis is disallowed in its entirety for tax year 2000.

ANSWER: Denied.

49.    By its FPAA, the Commissioner erred in determining that neither the Partnership nor its Partners have established the existence of the Partnership as a partnership as a matter of fact.

ANSWER: Denied.

50.    By its FPAA, the Commissioner erred in determining that even if the Partnership existed as a partnership, it was formed and availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interests of its Partners.

ANSWER: Denied.

1838290.1

51.    By its FPAA, the Commissioner erred in determining that the formation of the Partnership, the acquisition of any interest in the Partnership by the Partners, the purchase of offsetting options, the transfer of offsetting options to the Partnership in return for a partnership interests, the purchase of assets by the Partnership, the distribution of those assets to the Corporation in complete liquidation of the partnership interests in the Partnership, and the subsequent sale of those assets to generate a loss, all within a period of less than nine months, had no business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes. Accordingly, the Commissioner erred in determining that the Partnership and the preceding described transactions shall be disregarded in full and:

       a)    Any losses resulting from the above transactions are not allowable as deductions; and

       b)    Increases in bases of assets are not allowed to eliminate gain for federal income tax purposes.


ANSWER: Denied.



52.    By its FPAA, the Commissioner erred in determining that the Partnership was a sham, lacked economic substance, and under Treasury Regulation § 1.701-2 was formed and availed of in connection with a transaction or transactions in tax year 2000, a principal purpose of which was to reduce substantially the present value of the Partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Code.  Consequently, the Commissioner erred in determining that:

       a)    The Partnership is disregarded and that all transactions engaged in by the Partnership are treated as engaged in directly by its Partners, including the determination that the assets acquired by the Partnership, including but not limited to the foreign currency options, were acquired directly by the Partners;

       b)    The foreign currency options contributed to or assumed by the Partnership are treated as never having been contributed to or assumed by the Partnership and any gains or losses realized by the Partnership on such options are treated as having been realized by its Partners;

       c)    The Partners of the Partnership should be treated as not being partners in the Partnership; and

1838290.1

d)     Contributions to the Partnership will be adjusted to reflect clearly the Partnership's or its Partners' income.

ANSWER: Denied.

53.    By its FPAA, the Commissioner erred in determining that the obligations under the sold option positions transferred to the Partnership (the Short Options) constitute liabilities for purposes of Treasury Regulation § 1.752-6, the assumption of which by the Partnership shall reduce the Partners' bases in the Partnership in the amounts of $11,640,000.00 for Harry D. Murphy, $6,111,000.00 for Marc D. Murphy, and $6,111,000.00 for Stratton K. Murphy, but not below the fair market value of the partnership interests.

ANSWER: Denied.

54.    By its FPAA, the Commissioner erred in determining that neither the Partnership nor its Partners entered into the options positions, acquired North Carolina State bonds or purchased stock with a profit motive for purposes of Code Section 165(c)(2).

ANSWER: Denied.

55.    By its FPAA, the Commissioner erred in determining that the economically offsetting option positions constitute an arrangement under Code Section 465(b)(4) to limit the exposure to risk of loss and that neither the Partnership nor its Partners established any other amounts considered to be at-risk for purposes of Code Section 465 that would allow the Partners to deduct losses arising from or in connection with the Partnership.

ANSWER: Denied.

1838290.1

56.     By its FPAA, the Commissioner erred in determining that, even if the foreign currency options are treated as having been contributed to the Partnership, the amount treated as contributed by the Partners under Code Section 722 is reduced by the amounts received by the contributing Partners from the contemporaneous sales of the call options to the same counter-party.  Thus, the Commissioner erred in determining that the basis of the contributed options is reduced both in the hands of the contributing Partners and the Partnership, and consequently that any corresponding claimed increases in the outside basis in the Partnership resulting from the contributions of the foreign currency options is disallowed.

ANSWER: Denied.

57.     By its FPAA, the Commissioner erred in determining that the adjusted bases of the purchased option positions and other contributions made by the Partners to the Partnership have not been established under Code Section 723. Consequently, the Commissioner erred in determining that the Partners of the Partnership have not established adjusted bases in their respective interests in the Partnership in an amount greater than zero.

ANSWER: Denied.

58.     By its FPAA, the Commissioner erred in determining that, in the case of a sale, exchange, or liquidation of the interests in the Partnership, neither the Partnership nor its Partners have established that the bases of the Partners' interests were greater than zero for purposes of determining gain or loss to such Partners from the sale, exchange, or liquidation of such partnership interests.

ANSWER: Denied.

59.     By its FPAA, the Commissioner erred in determining that the adjustments of

1838290.1

partnership items of the Partnership are attributable to a tax shelter for which no substantial authority has been established for the position taken, and for which there was no showing of reasonable belief by the Partnership or its Partners that the position taken was more-likely-than-not the correct treatment of the tax shelter and related transactions.

ANSWER: Denied.

60.     By its FPAA, the Commissioner erred in determining that all of the alleged underpayments of tax resulting from the FPAA's adjustments of partnership items are attributable to, at a minimum:
   a)     Substantial understatements of income tax;
   b)     Gross valuation misstatement(s); or
   c)     Negligence or disregarded rules or regulations.

ANSWER: Denied.

61.     By its FPAA, the Commissioner erred in determining that there has not been a showing by the Partnership or any of its Partners that there was reasonable cause for any of the resulting underpayments, that the Partnership or any of its Partners acted in good faith, or that any other exceptions to the penalty apply.

ANSWER: Denied.

62.     By its FPAA, the Commissioner therefore erred in determining that, at a minimum, the accuracy-related penalty under Code Section 6662(a) applied to all underpayments of tax attributable to adjustments of partnership items of the Partnership, and that the penalty should be imposed on the components of underpayment as follows:

   a)     A 40% penalty should be imposed on the portion of any

23

underpayment attributable to the gross valuation misstatement as provided by Code Section 6662(a), 6662(b)(3), 6662(e), and 6662(h).

b)    A 20% penalty should be imposed on the portion of the underpayment attributable to negligence or disregard of the rules and regulations as provided by Code Section 6662(a), 6662(b)(1) and 6662(c).

c)    A 20% penalty should be imposed on the underpayment attributable to the substantial understatement of income tax as provided by Code Sections 6662(a), 6662(b)(2), and 6662(d).

d)    A 20% penalty should be imposed on the underpayment attributable to the substantial valuation misstatement as provided by Code Sections 6662(a), 6662(b)(3), and 6662(e).

ANSWER: Denied.

63.    By its FPAA, the Commissioner erred in making each and every adjustment set forth therein.

ANSWER: Denied.

## IX.

64.    Plaintiff incorporates paragraphs 1 through 63 as though fully set forth herein.

ANSWER:  Defendant incorporates its answers to paragraphs 1 through 63 of the

Complaint as though fully set forth herein.

65.    The Partnership properly calculated and reported its net ordinary loss from Form 4797 for tax year 2000 equal to ($738,000.00).

ANSWER: Denied.

1838290.1

66.    The Partnership properly calculated and reported its ordinary dividend income for tax year 2000 equal to $60.00.

ANSWER: Denied.

67.    The Partnership properly calculated and reported its net short-term capital gain for tax year 2000 equal to $11,560.00.

ANSWER: Denied.

68.    The Partnership properly calculated and reported its tax investment income for tax year 2000 equal to $60.00.

ANSWER: Denied.

69.    The Partnership properly calculated and reported its tax-exempt interest income for tax year equal to $9,836.00.

ANSWER: Denied.

70.    In addition to the foregoing, the Partnership properly calculated and reported all of its items of income, and gain, loss, deduction, and credit for tax year 2000.

ANSWER: Denied.

1838290.1

71.    The Partnership properly calculated and reported its outside partnership basis for tax year 2000.

ANSWER: Denied.


72.    The Partnership is an entity validly created and existing for all state and federal law purposes, and recognized as a "partnership" for federal income tax purposes for tax year 2000.

ANSWER:  Defendant admits that the purported Partnership purported to be a Delaware Limited Liability Company, but states that the purported Partnership is a factual sham and that, even if it did exist, this entity is disregarded for federal tax purposes because it had no business purpose, and also states that the purported Partnership, even if it did exist, was created as a sham entity as a step in a prearranged plan and is thus also disregarded for federal income tax purposes under the step transaction doctrine, and also states that this entity, if it did exist, was created for a purpose which was inconsistent with the intent of Subchapter K of the Internal Revenue Code.


73.    The Partnership was not formed and/or availed of solely for purposes of tax avoidance.

ANSWER: Denied.


74.    The Partnership was not a sham – in substance or in fact – for federal income tax purposes for tax year 2000.

ANSWER: Denied.

26

75.     The Partnership did not lack economic substance for federal income tax
        purposes for tax year 2000.

ANSWER: Denied.


76.     No part of the Transactions may be ignored, disregarded, or recharacterized on
        the basis that they lacked economic substance, business purpose, or otherwise
        constituted a sham – in  fact or substance – for federal income tax purposes.

ANSWER: Denied.


77.     The Partnership and its Partners properly determined and reported the tax
        consequences of the Transactions for federal income tax purposes.

ANSWER: Denied.


78.     The losses and other benefits claimed by the Partners on their federal tax returns
        cannot be disallowed on the basis that either the Transactions or any of the
        entities involved therein constituted shams or lacked economic substance
        because neither of these doctrine is incorporated into or otherwise a part of the
        Code.

ANSWER:  Paragraph 78 states allegations of law to which no response is required.  To

the extent that a response is required, the allegations are denied.


1838290.1

79.    Disallowance of the losses or other benefits claimed by the Partners in this case on the basis of either the sham-transaction or economic-substance theories asserted by the Commissioner would violate the separation of powers provisions of the United States Constitution.

ANSWER:  Paragraph 79 states allegations of law to which no response is required.  To the extent that a response is required, the allegations are denied.

80.    The Partnership was not formed or availed of in connection with a transaction or transactions in a manner inconsistent with the intent of Subchapter K of the Code and may not otherwise be disregarded, nor may any of its transactions be recharacterized , in whole or in part, under the authority of Treasury Regulation § 1.701-2.

ANSWER:  Paragraph 80 states allegations of law to which no response is required.  To the extent that a response is required, the allegations are denied.

81.    Treasury Regulation § 1.701-2 is invalid.

ANSWER:  Paragraph 81 states allegations of law to which no response is required.  To the extent that a response is required, the allegations are denied.

82.    The obligations under the Short Options do not constitute liabilities under Code Section 752.  Consequently, the Partnership's assumption of those obligations is not regarded as a distribution of money to the Partners under the Code and cannot serve to reduce the Partners' bases in their interests in the Partnership.

ANSWER:  Paragraph 82 states allegations of law to which no response is required.  To the extent that a response is required, the allegations are denied.

1838290.1

83.     Even if the obligations under the Short Options do constitute liabilities under Code Section 752, the amount of the "liability" transferred to the Partnership under those Options is equal to zero.   Consequently, the Partners' bases in the Partnership cannot be reduced by any part of the Short Options transferred to the Partnership.

ANSWER:  Paragraph 83 states allegations of law to which no response is required.  To

the extent that a response is required, the allegations are denied.

84.     Treasury Regulation § 1.752-6 is invalid and inapplicable to the facts of this case.

ANSWER:  Paragraph 84 states allegations of law to which no response is required.  To

the extent that a response is required, the allegations are denied.

85.     Code Section 165(c)(2) only applies with respect individuals, and therefore does not apply to the Partnership.  Moreover, to the extent that Code Section 165(c)(2) applies to the Partners, it requires partner-level determinations, over which this Court lacks jurisdiction in connection with this TEFRA proceeding.

ANSWER:  Paragraph 85 states allegations of law to which no response is required.

86.     Alternatively, Code Section 165(c)(2) does not operate to disallow the losses or other tax benefits claimed by either the Partnership or the Partners for tax year 2000.

ANSWER:  Paragraph 86 states allegations of law to which no response is required.

1838290.1

87.     Code Section 465 applies at the partner – rather than partnership – level, and therefore does not apply to the Partnership.  Moreover, to the extent that Code Section 465 applies to the Partners, it requires partner-level determinations, over which this Court lacks jurisdiction in connection with this TEFRA. proceeding.

ANSWER:  Paragraph 87 states allegations of law to which no response is required.

88.     Alternatively, the Options do not represent an arrangement under Code Section 465(b)(4) to limit the exposure to risk of loss, and Section 465 otherwise does not operate to limit the losses or other tax benefits claimed by either the Partnership or its Partners for tax year 2000.

ANSWER:  Paragraph 88 states allegations of law to which no response is required.

89.     The Long Options and the Short Options are separate investments for federal income tax purposes.

ANSWER: Denied.

90.     The amounts treated as contributed by the Partners to the Partnership under Code Section 722 are not reduced by the amounts received by the Partners from the sales of the Short Options.

ANSWER:  Paragraph 90 states allegations of law to which no response is required.  To

the extent that a response is required, the allegations are denied.

91.     The Partners have adequately established and substantiated their adjusted bases in their interests in the Partnership under Code Section 723, and have properly calculated and reported such adjusted bases for federal income tax purposes.

ANSWER: Denied.

1838290.1

92.    In every other respect, the federal tax consequences of the transactions at issue in this case, including without limitation the Transactions, are as set forth in the Opinion discussed above and as reported by the Partnership and its Partners on their federal tax returns for tax year 2000.

ANSWER:  Paragraph 92 states allegations of law to which no response is required.  To

the extent that a response is required, the allegations are denied.

93.    The Partners are not subject to penalties under Code Section 6662 on any underpayment ultimately determined because there was reasonable cause for such underpayment and the Partners acted in good faith as contemplated by Code Section 6664(c)(1).

ANSWER:  Paragraph 93 states allegations of law to which no response is required.  To

the extent that a response is required, the allegations are denied.

94.    The Partners are not subject to accuracy-related penalties under Code Section 6662 because any tax liability ultimately determined is not attributable to: (a) negligence or disregard of rules or regulations; (b) any substantial understatement of income tax; or (c) any substantial or gross valuation misstatement under Chapter 1.

ANSWER:  Paragraph 94 states allegations of law to which no response is required.  To

the extent that a response is required, the allegations are denied.

95.    The Partners are not subject to penalties under Code Section 6662 because any understatement ultimately determined is attributable to items for which the relevant facts were adequately disclosed in the Partnership's and the Partners' federal tax returns or in a statement attached thereto, and there is a reasonable basis for the tax treatment of such item.

ANSWER:  Paragraph 95 states allegations of law to which no response is required.  To

the extent that a response is required, the allegations are denied.

1838290.1

96.    The Transactions at issue in this case do not constitute a tax shelter within the meaning of Code Section 6662.

ANSWER:  Paragraph 96 states allegations of law to which no response is required.  To

the extent that a response is required, the allegations are denied.

97.    In the alternative, even if the Transactions do constitute a tax shelter, the Partners are not subject to penalties under Code Section 6662 because any understatement ultimately determined is attributable to the tax treatment of items for which there is or was substantial authority for such treatment, and furthermore, the Partners reasonably believed that the tax treatment of such item by them as more-likely-than-not the proper treatment.

ANSWER:  Paragraph 97 states allegations of law to which no response is required.  To

the extent that a response is required, the allegations are denied.

## X.

98.    Defendant has the burden of proof under Section 7491 of the Code.

ANSWER:  Paragraph 98 states allegations of law to which no response is required.  To

the extent that a response is required, the allegations are denied.

1838290.1

**XI.**

WHEREFORE, defendant prays that plaintiff's complaint for readjustment be dismissed and that defendant be granted such other and further relief as the Court deems to be just and appropriate.

  s/ Dennis M. Donohue

DENNIS M. DONOHUE
Senior Litigation Counsel
JOHN LINDQUIST
DAVID M. STEINER
Trial Attorneys
Tax Division
U.S. Department of Justice
P.O. Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-5892
Facsimile: (202) 514-5238
E-Mail: David.M.Steiner@usdoj.gov

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section

Dated:   July 31,   2006

33

1838290.1

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2006, I electronically filed the foregoing Answer

with the Clerk of the Court using the ECF system which will send notification of such

filing to the following:

> Joel N. Crouch
> Texas State Bar No. 05144220
> Meadows, Owens, Collier, Reed
>     Cousins & Blau, L.L.P.
> 901 Main Street, Suite 3700
> Dallas, Texas 75202

> s/ David M. Steiner
> David M. Steiner
> Trial Attorney, Tax Division
> U.S. Department of Justice
> Post Office Box 55
> Ben Franklin Station
> Washington, D.C. 20044
> (202) 307-5892

1838290.1